May it please the Court. Your Honors, my name is Stephen Babcock. I'm from the Federal Defenders of Montana. I represent the appellant, a youth in this manner, Anthony Prettyontop, A.P.O.T. The facts of this case are pretty straightforward. Mr. Prettyontop pled guilty or pled true to an information as a youth to the charge of aggravated sexual abuse. That was in April of 2006. In May of 2006, at a sentencing hearing on a youth case, he was incarcerated to official detention for a term of 60 months, 5 years, which is the statutory maximum for a youth in this manner. I guess the case that I believe is certainly telling in this matter is this Circuit's latest decision in United States v. Juvenile, the December 14th, 2006 case. This Court in January of this year issued an order for the parties to discuss the applicability of that. And I think because that case is 100 percent on point, that decision should be reversed and it should be remanded. The holding in that case is that — If it were reversed and remanded, what do we do now? Go back and try it as a juvenile? I guess that it would be reversed and go back for sentencing, Your Honor. And at the new sentencing, that the Court actually applied the Federal Juvenile Delinquency Act and not sentence the youth pursuant to the sentencing reform act. How old is he now? This youth now is 20 years of age. He was 17 years of age when he committed this offense, so he wasn't adjudicated. Is he a person that age in the juvenile penal system? Yes, he is, Your Honor. In the rehabilitation system? Yes, he is. He would still be considered a youth. Until 25, right? Until 25, that is correct. He was sentenced pursuant to the term of any individual between the ages of 18 and 21, and that's why the statutory max is 5 years. But the record in this case is very clear that the Federal Juvenile Delinquency Act was not used. The Sentencing Reform Act was used. What would the sentence be under the proper statute? I guess that that would have to be determined using the purpose of the Federal Juvenile Delinquency Act, which is rehabilitation. And the Court in the December 14th ruling said that it was plain error. It was certainly plain error again in this case. It certainly affected this youth's substantial rights for the Court not to consider the rehabilitative policies of the Federal Juvenile Delinquency Act. So the statutory maximum would still be the same, but you're saying that with the different policy considerations, the actual sentence could have been different. Certainly, Your Honor. And I think that's because Congress has made it clear, the courts over and over again have made it clear that we treat youths with a different hand than we treat adults. And rehabilitation is the primary focus, not that the Sentencing Reform Act doesn't have an aspect that deals with rehabilitation, but it's certainly not to the same extent as the Federal Juvenile Delinquency Act. This Court has said that it must be clear from the record, if not explicit, that the district court weighed all of the relevant factors and found that the disposition imposed was the least restrictive ways to accomplish the goals of rehabilitation. We know that is not clear in this case. Once again, the Court went over the 3553A factors. The Court then said, pursuant to the Sentencing Reform Act, there was no mention explicit of the Federal Juvenile Delinquency Act as exactly occurred in this case in the same issue that was decided in December of 2006. If there's resentencing of a juvenile on remand, does he get credit for the time served? I believe he would, yes, certainly for the time that was in between, yes, between the resentencing and the original imposition of sentence. How much time is left? When was he sentenced? Well, he would still have more years left. How much? He was originally sentenced to 60 months, if I'm understanding. But from when? That's the question. How long has he actually been incarcerated, I think, is the question. Yes. He would have been incarcerated, I believe, from January of 2006. There was a violation of his pretrial release conditions, and he was incarcerated at that time. So it would be my belief that it would be from January of 2006 until he would come back for resentence. Has he received any rehabilitation training up to this point? You know, I can't speak to that, Your Honor. The Court said hopefully that he does receive it. He is incarcerated, and he is incarcerated in the Bureau of Prisons. And the reason why is because he did commit a crime when he was over the age of 18. He has been sentenced to the Bureau of Prisons. So I don't think that he's getting any type of appropriate rehabilitation. I don't think incarceration for this individual is appropriate for rehabilitation purposes. With that, Your Honors, I guess I would save the rest of my time for rebuttal. I think this case is very clear, and it should be remanded to judge sentences underneath the right statute. Thank you. Thank you. Ms. Sook. Good morning, Your Honors. Lori Sook from the District of Montana. The government has to be candid here. We have United States v. Juvenile that was decided in December of 2006. It couldn't be more on point. It's exactly the same judge using exactly the same language. I can tell the Court he's fixed his colloquy in juvenile sentencing now. Why didn't you just stipulate to canceling the argument and sending it back? Well, the reason is, Your Honor, I was here for other arguments this week. Okay. So I certainly would have done it. We've seen them both before. We appreciate your candor. I just didn't see you, Your Honor. Yeah. The only argument that I can make here is, under plain error, you do have to look at the substantial rights of this juvenile. And Judge Siebel in this case understood what he was facing, a juvenile who was completely in a circle going nowhere but down.  He is free to give the same sentence. But we can't be certain that he would. There is just nothing explicit on the record to tell you that he would. Certainly, the facts tell you that he would. Well, it's a very violent crime, and he has a long history of other crimes. Very violent crime. Very violent history. And really, the problem is there's no stability for him at this point outside of the environment that the judge placed him in. His abysmal performance on pretrial release when they tried to release him to his family shows the Court that. But to say that the judge explicitly said, rehabilitation is my guiding force and that is what I'm going to use, he did not. He went down the factors of the Bail Reform Act. And if we didn't have U.S. v. Juvenile from December, I might stand here and argue to you, harmless error, because he's going to impose the same sentence. But we don't know that. I can't do that. Okay. Well, we appreciate that. Thank you. Thank you. Any rebuttal? Okay. Thank you. The case just argued is submitted, and we stand adjourned.
judges: Beezer, Graber, Paez